UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTYNE R.[1] | : | Case No. 2:22-cv-2897 |
| | : | |
| Plaintiff, | : | District Judge Edmund A. Sargus |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff Justyne R. brings this case challenging the Social Security Administration's denial of his applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #8).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

1

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on May 4, 2020, alleging disability due to several impairments, including an anxiety disorder, depression, bi-polar disorder, Tourette's Syndrome, panic disorder, and agoraphobia. (Doc. #8-6, *PageID* #328). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a telephonic hearing before Administrative Law Judge (ALJ) Kevin R. Barnes. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since July 1, 2019, the alleged disability onset date. |
| Step 2: | | He has the following severe impairments: anxiety disorder, depressive disorder, Tourette's syndrome, panic disorder, agoraphobia, major depressive disorder, borderline personality disorder, and narcissistic personality disorder. |
| Step 3: | | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of performing "a full range of work at all exertional levels but with the following nonexertional limitations: work is limited to simple, routine and repetitive tasks, performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes. Only occasional interaction |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

|  |  |
|---|---|
|  | with the public and only occasional interaction with co-workers with no tandem tasks." |
| Step 4: | He is unable to perform any past relevant work. |
| Step 5: | He can perform a significant number of jobs that exist in the national economy. |

(Doc. #8-2, *PageID* #s 103-13). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since July 1, 2019. *Id.* at 113.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 104-12), Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), and Plaintiff's Reply (Doc. #13). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.     Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.    Discussion**

In this case, Plaintiff asserts one statement of error, which is that the ALJ failed to properly evaluate the opinions provided by the consulting examining psychologist, Susan Rowland, Ph.D. (Doc. #10, *PageID* #s 460-67). In response, the Commissioner maintains that the ALJ properly evaluated Dr. Rowland's opinion consistent with the regulations and that his decision is supported by substantial evidence. (Doc. #12, *PageID* #s 474-83).

Since Plaintiff filed his applications after March 27, 2017, they are governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

Here, Plaintiff alleges that the ALJ erred in his assessment of the opinion of consulting psychologist, Susan Rowland, Ph.D. (Doc. #10, *PageID* #s 460-67).  Dr. Rowland examined Plaintiff on September 24, 2020, on behalf of the state agency.  (Doc. #8-7, *PageID* #s 419-39). As part of her assessment, Dr. Rowland interviewed Plaintiff and reviewed a function report that he completed. *Id*. at 420-21. Dr. Rowland characterized Plaintiff as "generally cooperative and appeared invested in participating meaningfully in the interview." *Id*. at 431.  Dr. Rowland further

5

described Plaintiff as oriented and without "any outward indications of restlessness, psychomotor retardation, or psychomotor agitation." *Id*. at 432. While Plaintiff described his mood as "[v]ery anxious[,]" Dr. Rowland observed that "[h]e did not evidence any signs of anxiety as his body posture was open and manner of speech spontaneous." *Id*. Dr. Rowland also noted that Plaintiff's "speech was clear and understandable" and that his "thought processes appeared generally clear, linear, organized, and goal directed." *Id*. at 434. She found his mental functioning to be "entirely intact" and his capacity for sound judgment to not be overtly impaired. *Id*. at 435. Additionally, Dr. Rowland concluded that Plaintiff had good insight and intelligence in the high average range. *Id*.

Following the examination, Dr. Rowland assessed Plaintiff with illness anxiety disorder, major depressive disorder (recurrent, moderate), borderline personality disorder, narcissistic personality disorder, alcohol use disorder (in early remission), and cannabis use disorder. *Id.* at 436. She characterized his prognosis as "[f]air" and explained that some of Plaintiff's "anxiety is driven by his illness anxiety disorder" but that his reports of "high anxiety appeared to be highly embellished as his presentation did not match his self-report." *Id*. She opined that Plaintiff's difficulty with retaining employment was "secondary to the belligerence that is part of his borderline personality disorder, which is complicated by his narcissistic personality disorder and pejorative opinion of others." *Id*.

In terms of his functional limitations, Dr. Rowland opined that Plaintiff retained the ability to understand, carry out, and remember instructions and pointed to his high average range

intelligence, entirely intact mental functioning, intact memory, and history of being able to understand his supervisors' directives at past employment. *Id*. at 436-37.

Dr. Rowland likewise found that Plaintiff "exhibits the ability to sustain concentration and persist in work-related activities at a reasonable pace." *Id*. at 437. Here, she noted that Plaintiff may be challenged by his anxiety and lack of adequate coping skills and, therefore, recommended he "learn[] appropriate coping strategies or at least be[] permitted to take additional short breaks at work if mental health symptoms worsen." *Id*. In reaching this conclusion, Dr. Rowland again noted that Plaintiff's mental functioning was "entirely intact" and that he was able to pay attention without issues focusing. *Id*. at 436. She also observed that Plaintiff "does not appear to have any deficits in his performance of activities of daily living secondary to his mental health." *Id*.

In evaluating Plaintiff's ability to maintain effective social interactions, Dr. Rowland concluded that he has "some difficulty with his ability to maintain effective social interactions with supervisors, co-workers, and the public" and that "given his antagonistic nature, he might perform better at a job requiring limited interactions with people and the general public." *Id*. at 438. Dr. Rowland recounted Plaintiff's "long history of complications in multiple arenas of his life secondary to his antagonistic nature" and that he reported "having intense interpersonal conflicts with his supervisors and coworkers, such that he was fired secondary to his belligerent encounters." *Id*.

The last functional area Dr. Rowland evaluated was Plaintiff's ability to deal with normal pressures in a competitive work setting. *Id*. Here, Dr. Rowland opined that Plaintiff "may have some difficulty dealing with normal pressures in a competitive work setting; but, at this time,

7

appears to be capable of managing at least basic tasks and interactions." *Id*. She offered that Plaintiff's polysubstance abuse history may provide "insight into his potential response to failure and/or pressure that may impact his future ability to deal with the normal pressures in a competitive work setting." *Id*. She added, however, that Plaintiff denied current usage of any substances apart from marijuana and that he presented as mentally intact with high average range intelligence, and no deficits in performance of activities of daily living secondary to his mental health. *Id*. at 438-39.

      At the end of her evaluation, Dr. Rowland provided the following summary:

> [Plaintiff's] antagonistic nature and occasional anxiety may lead him to have difficulties working in a setting with others in a fast-paced environment performing complex tasks with other co-workers, however. He may perform better, therefore, in a work environment where he has limited contact with other co-workers and the public under a consistent (not multiple), trusted supervisor accomplishing simple tasks with clear, simple instructions. He would also benefit from learning appropriate coping strategies or being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job.

*Id.* at 439.

      Upon review, the ALJ found Dr. Rowland's assessment to be "mostly persuasive." (Doc. #8-2, *PageID* #111). According to the ALJ, "Dr. Rowland provided an in[-]depth analysis of [Plaintiff's] functional capacity full[y] supported by her evaluation findings and observation." *Id.* The ALJ explicitly added that, in reaching this conclusion, he considered Dr. Rowland's "medical specialty, specialized Social Security disability program knowledge, extensive experience performing independent, nontreating, and objective medical examinations of Social Security disability claimants." *Id.* He also noted that he modified some of the functional limitations she

8

endorsed to "be more vocationally relevant and to depict [Plaintiff's] actual residual functional capacity to perform work related tasks." *Id*.

As noted above, Plaintiff raises a single statement of error in this case, which is that the ALJ erred by omitting Dr. Rowland's opined limitation that Plaintiff would benefit from "being permitted to take additional breaks while at work if mental health symptoms worsen while on the job." (Doc. #10, *PageID* #s 466-67) (citing Doc. #8-7, *PageID* #439). Specifically, Plaintiff claims that, in omitting this limitation, the ALJ failed to adhere to the new regulations governing the evaluation of medical opinions, which require him to "consider and evaluate each medical opinion for its supportability and consistency with the record." *Id*. at 460 (citing 20 C.F.R. § 404.1520c(b)(2)).

However, "the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail," but instead contemplate that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *See Chad T. v. Comm'r of Soc. Sec. Admin*., Case No. 3:21-cv-00052, 2022 WL 4355001 at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)). Thus, an ALJ's decision to not to explicitly use the "magic words" of "supportability" and "consistency" in his or her analysis does not translate to a finding that the regulations were not adhered to if the analysis otherwise addresses these factors. *See Sasha M. v. Comm'r*, Case No. 2:22-cv-2101, 2023 WL 1793536, at *6 (S.D. Ohio Feb. 7, 2023) ("While the ALJ did not use the 'magic words' supportability and consistency, her line of reasoning addressed both.") (quoting *Cormany v. Comm'r of Soc. Sec.*, No. 5:21-CV-

9

933, 2022 WL 2611952, at *7 (N.D. Ohio May 20, 2022), *report and recommendation adopted sub nom. Cormany v. Kijakazi*, No. 5:21CV933, 2022 WL 4115232 (N.D. Ohio Sept. 9, 2022)).

In this case, the ALJ ultimately found Dr. Rowland's opinion to be "mostly persuasive" and adopted all of her limitations, except that which permitted Plaintiff to take additional short breaks at work if his mental health symptoms worsen. In his decision, the ALJ sufficiently articulates why this limitation was not supported by and consistent with the record. Indeed, while the ALJ did not discuss the weight of the supporting and consistent evidence when providing his final evaluation of Dr. Rowland's opinion, he reasonably explained his rationale elsewhere in the opinion. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (finding that the ALJ's review of a medical opinion should be considered by viewing the decision as a whole).

In particular, the ALJ provided the following detailed explanation as to why this limitation was not consistent with the record:

> I do not adopt the limitation for additional breaks as the evidence of record does not support that [Plaintiff] has exacerbations in his mental health impairments, which would support such a limitation as expressed by Dr. Rowland. [Plaintiff] receives counseling/therapy once per month. There are no psychiatric hospitalizations of record. [Plaintiff] testified at the hearing that when he stopped taking his medication for panic attacks there was little, if any, change in his panic symptoms. Thus, the need for additional breaks is unsupported.

(Doc. #8-2, *PageID* #110).

The ALJ likewise found that Dr. Rowland's opined limitation permitting Plaintiff to take additional short breaks when his mental health symptoms worsen was not supported by Dr. Rowland's own evaluation. While Dr. Rowland provided this short break limitation to accommodate Plaintiff's limitations in his ability to sustain concentration and persist in work-

related activities at a reasonable pace, Dr. Rowland found that Plaintiff nonetheless "exhibits th[is] ability" as evidenced by the facts that his mental functioning was "entirely intact[,]" that he was able to pay attention without issues focusing, and that he had no deficits in his memory or in his performance of activities of daily living as a result of his mental health. (Doc. #8-7, *PageID* #s 436-37). These findings were echoed by the ALJ in his analysis and determination that Plaintiff had no more than a moderate limitation in this functional area. (Doc. #8-2, *PageID* #s 108-09).

Further, while Dr. Rowland recommended the short break limitation to account for Plaintiff's lack of coping skills in the event that his mental health symptoms worsen, the ALJ concluded that Plaintiff possessed "sufficient control over his symptoms with routine outpatient treatment including medication management." *Id*. at 108. In reaching this conclusion, the ALJ pointed out that Dr. Rowland's own report showed that Plaintiff's mental health symptoms improved with medication and medication adjustments, which further undermines the supportability of her opinion that Plaintiff be permitted short breaks in the event of worsening mental health symptoms. *Id*. at 110. In short, the ALJ's analysis of both factors of supportability and consistency is clear, adequately detailed, and substantially supported.

Finally, the ALJ's decision to omit Dr. Rowland's short break limitation is supported by the opinions of the state reviewing psychologists, Drs. Lisa Foulk, Psy.D., and Cindy Matyi, Ph.D. In reviewing Plaintiff's medical records, both Drs. Foulk and Matyi opined that Plaintiff had no more than moderate limitations in all areas of mental functioning. (Doc. #8-3, *PageID* #s 153-56, 170-72). Additionally, neither of these psychologists included a limitation that Plaintiff be permitted to have short breaks to account for worsening mental health symptoms while on the job.

11

*See id*. Instead, both observed that Plaintiff's "statements about his psychological condition are not entirely consistent[]" and that his "accounts of high anxiety appeared to be highly embellished as his presentation did not match his self-report." *Id*. at 154, 161, 170.

Overall, the ALJ found the opinions of Drs. Foulk and Matyi to be "persuasive" as the record generally supported their findings. (Doc. #8-2, *PageID* #111). He did, however, acknowledge slightly modifying their "function by function limitations … to more adequately represent [Plaintiff's] actually retained vocational functional capacity" in addition to finding that Plaintiff was more limited in the area of understanding, remembering, and applying information than what they had found. *Id*. Thus, to the extent that Plaintiff maintains that these medical opinions support his proposed RFC formulation, his argument lacks merit. *See Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined."); s*ee also Mosed v. Comm'r of Soc. Sec.*, No. 2:14–cv–14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) *report and recommendation adopted*, 2016 WL 1084679 ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing."). Instead, the ALJ's review of these opinions also support his decision to omit Dr. Rowland's limitation for short breaks.

Accordingly, despite Plaintiff's insistence that Dr. Rowland's short break limitation should have been incorporated, substantial evidence supports the ALJ's RFC assessment and decision not to include this limitation. In omitting this limitation, the ALJ clearly articulated why it was not

supported by or consistent with the evidence of record. Accordingly, the Court must defer to the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion…." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); s*ee also Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

Accordingly, Plaintiff's statement of error is not well taken.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. #10) be **DENIED;**

2. The Commissioner's non-disability determination be **AFFIRMED**; and

3. The case be terminated on the docket of this Court.

July 28, 2023								*s/Peter B. Silvain, Jr.*
									Peter B. Silvain, Jr.
									United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).